# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | | |
|---|---|---|
| DEVON LEO PORTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV621-078 |
| | ) | |
| JAVAKAH JOHNSON, | ) | |
| TREVONZA BOBBIT, and | ) | |
| LATOYA ELLIS | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Proceeding *pro se* and *in forma pauperis*, Plaintiff Devon Porter brings this 42 U.S.C. § 1983 action against Warden Bobbitt, Unit Manager Johnson, and CO II Latoya Ellis of Georgia State Prison ("GSP"). Doc. 1. The Court granted Plaintiff's request to pursue his case *in forma pauperis* (IFP), doc. 2, and he returned the necessary forms, docs. 7 & 8. Because he is proceeding IFP, Plaintiff's pleadings must be screened to protect potential defendants. 28 U.S.C. § 1915A; *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984); *Al-Amin v. Donald*, 165 F. App'x 733, 736 (11th Cir. 2006).

1

# I.   Background

Plaintiff alleges that Defendants violated his civil rights during his incarceration at GSP.  Doc. 1 at 3.  He claims that he was segregated in "Tier II" while at GSP, where he was deprived of medical attention, suffered unconstitutional uses of force, denied due process by virtue of indefinite containment within Tier II, denied his First Amendment rights, and confined in conditions which violate the Eighth Amendment. Doc. 1 at 5-13.  As to his medical claim, Plaintiff states that he suffers from several medical conditions, including one which causes him to have seizures.  *Id.*  Although he suffered multiple seizures and asked Defendants Johnson and Bobbitt for medical attention, he was repeatedly refused, threatened, and left to continue suffering.  Moreover, he was deprived of medication used to prevent the seizures because medical staff refused to enter the Tier II cell due to the filthy conditions within the Tier II area.  *Id.* at 10.  As to his use of force claim, Plaintiff alleges that Johnson repeatedly slammed him into a wall while taunting him about his back injury.  *Id.* at 7.  Defendant Johnson also purportedly dragged Plaintiff up the stairs to his dorm while Plaintiff screamed in pain even though Plaintiff was otherwise compliant and handcuffed.  *Id.*  Once

there, Defendant Johnson "yanked" Plaintiff's hands through the meal-tray flap and then pulled them up and down over the flap causing injury. *Id.*

Defendant Johnson then gave Plaintiff a disciplinary report regarding the incident, which caused Plaintiff to be illegally retained in phase I of the Tier II program.  Doc. 1 at 7-8.  In retaliation for filing grievances, Plaintiff was refused a pen to sign his offender rights form, which appears to have impacted his continued Tier II phase status.  *Id.* at 8.  A retaliatory and fraudulent search of Plaintiff's cell was conducted on May 12, 2020, which resulted in Plaintiff being falsely accused of hiding sharpened and unsharpened metal in the rafters of his cell.  *Id.* Plaintiff sought counseling regarding the incident, and he sought a disciplinary hearing to ensure that he received due process, but he was again retained in Tier II without a hearing.  *Id.* at 9.  When he did receive a hearing in June 2020, he was told that he "should've told all this at your investigation" and was sanctioned another 90 days even though he had already been rephased for that same incident.  *Id.*  Plaintiff states that he was held in his nine-month Tier II program for 17 months.  *Id.*

Plaintiff claims this extended detention without a hearing constitutes a due process violation.

Plaintiff also complains that an investigator from a legal aid office attempted to speak with him, but that officials falsely told the attorney that Plaintiff refused her call.  Doc. 1 at 9.  This appears to be the basis for his First Amendment claim.   Next, he states that during his 17 months in lockdown, "there were instances of fecal infested flood waters left standing on the dayroom floor, trickling into the cells which we were forced to eat, breathe, and endure for durations exceeding 72 hours."  *Id.* He complains that fires were set in the dorms in attempt to gain attention from officers.  The fires were not extinguished "but allowed to eventually 'burn out,'" which caused "harsh-harmful vapors."  *Id.* at 10.  The conditions were so poor that pill calls were omitted in their entirety because nurses would not enter on account of the dorm's conditions.  *Id.* Finally, Plaintiff notes that Johnson, as well as five other officers, were arrested and terminated from the Georgia Department of Corrections for

their poor behavior, but it appears that the termination was not relevant to Plaintiff's allegations.[1]

## II.    Legal Standard

The Court reviews Plaintiff's claim pursuant to 28 U.S.C. § 1915A to determine whether he has stated a colorable claim for relief under 42 U.S.C. § 1983.  A complaint or any portion thereof may be dismissed if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  *See* 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B). Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff.  *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).  As Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings

---

[1] GSP was closed in 2022.  Plaintiff states that he has since been transferred to Telfair State Prison.  Doc. 1 at 4.

drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

## III.  Discussion

In order to prevail in a civil rights action under 42 U.S.C. § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law. *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).  A liberal construction of Plaintiff's complaint suggests he alleges two claims under the First Amendment, one of which involves multiple alleged deprivations in the form of retaliatory acts, and the other implicates the First Amendment's prohibition on refusing his "access to courts."  However, the retaliatory acts themselves also appear to, in some cases, constitute distinct claims of constitutional violations.  For example, Plaintiff's allegations of retaliatory acts implicate the Due Process clause as well as the Eighth Amendment prohibitions on deliberate indifference to serious medical needs, excessive uses of force, and conditions of confinement which are inhumane.  In some cases, Plaintiff falls short of stating elements required to state the claims he pursues.  Given these deficiencies, he is

allowed one opportunity to amend his complaint in consideration of the below.

## A. First Amendment Retaliation & Access to Courts

"The First Amendment, as incorporated by the Fourteenth Amendment, prohibits states from 'abridging the freedom of speech.'" *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (quoting U.S. Const. amend. I). For a prisoner to state a First Amendment retaliation claim under § 1983, the prisoner must establish: (1) that his speech or act was constitutionally protected; (2) that the defendant's retaliatory conduct adversely affected the protected speech; and (3) that there is a causal connection between the retaliatory actions and the adverse effect on the speech. *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008). A prisoner's filing of a grievance concerning his conditions of his imprisonment is protected speech under the First Amendment. *Thomas v. Lawrence*, 421 F. App'x 926, 927–28 (11th Cir. 2011) (citing *Douglas*, 535 F.3d at 1321). Further, it is well established that a prison inmate "retains those First Amendment rights that are not inconsistent with his

status as a prisoner or with the legitimate penological objectives of the corrections system." *Douglas*, 535 F.3d at 1333 (citations omitted).

Under the First Amendment, prisoners and pre-trial detainees have a right to "at least some" telephone access in order to contact friends and family, subject to reasonable restrictions based on legitimate order and security concerns. *Feeley v. Sampson*, 570 F.2d 364, 374 (1st Cir. 1978); *see also Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996) (applying *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), factors to determine reasonableness of restrictions on prisoner's First Amendment right to telephone access). Likewise, communication rights generally include the right to communicate with counsel, and prison practices should not "chill[ ], inhibit[ ], or interfere[ ]" with a prisoner's "ability to speak, protest, and complain openly to his attorney so as to infringe his right to free speech." *Al-Amin*, 511 F.3d at 1334 (examining right to communicate with counsel via the mail).

To prevail on a retaliation claim, the adverse action that the inmate suffers as a result of the prison official's alleged retaliation must be such that it "would likely deter a person of ordinary firmness from engaging in such speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

The second element of the cause of action thus requires "an objective standard and a factual inquiry." *Id.* at 1277.  The third element, whether there was a causal connection between the retaliatory acts and the adverse effect on the speech, "asks whether the defendants were subjectively motivated to discipline because [the prisoner] complained of the conditions of his confinement." *Id.* at 1278.

Virtually all of Plaintiff's allegations of harm appear to be the result of retaliation for Plaintiff's repeated grievances regarding his placement on Tier II and his lack of medical care.  It is apparent from the face of the Complaint that Plaintiff has alleged the elements of this claim against Johnson: (1) he filed "countless grievances on each issue," doc. 1 at 3; (2) the retaliation was significant enough to deter engagement in speech, *see id.* at 7 ("Johnson then grabbed me and slammed me into the wall" and generally claiming that he was denied medical care); and moreover, it also appears that there is a causal connection between the retaliatory actions and the adverse effect on the speech, *see* doc. 1 at 6 ("I asked Mr. Johnson why he continually ignores me when I attempt to call him for medical attention and other issues and he responded, 'because I don't want you to write any more grievances on me.  You curse me out and then

expect me to help you.  That's crazy!'").  His allegations are, therefore, sufficient to state a First Amendment retaliation claim.  *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  Unlike the access-to-courts claim, discussed below, a free speech claim requires no additional allegation of "actual injury" because "protection of an inmate's freedom to engage in protected communications is a constitutional end in itself."  *Mitchell v. Peoples*, 10 F.4th 1226, 1230 (11th Cir. 2021) (quoting *Al-Amin*, 511 F.3d at 1333).

Plaintiff's allegations plausibly state a claim against Defendant Ellis and Johnson for a violation of these rights.  *But see Pope*, 101 F.3d at 1384 (considering reasonableness of prison administrators' decision to limit prisoner access to telephonic communications) (citing *Turner*, 482 U.S. at 89-91).  Although Plaintiff has stated this claim quite clearly, because his other claims are insufficient, he is given an opportunity to amend his complaint, discussed more fully below.  He is advised that to pursue this claim, he must restate it in his Amended Complaint or it will be deemed abandoned.  *Pintando v. Miami–Dade Hous. Agency,* 501 F.3d 1241, 1243 (11th Cir. 2007) (holding that once the district court accepts the amended pleading, "the original pleading is abandoned by the

amendment, and is no longer a part of the pleader's averments against his adversary."). Alternatively, he can inform the Court that he wishes to proceed only on those claims determined herein to be sufficient from his original Complaint.

Plaintiff additionally appears to make an "access to courts" claim. Plaintiff claims that Defendant Ellis told an attorney that Plaintiff refused to speak with her. Plaintiff claims he had no knowledge of the attorney's call and did not refuse it. Inmates and pretrial detainees have a right of access to the courts that includes the protection of "uninhibited, confidential communications" with their attorneys. *Mitchell*, 10 F.4th at 1230. Plaintiff, however, does not state a denial-of-access-to-the-courts claim. To state a claim for a denial of access to the courts, a plaintiff must allege an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006). "Actual injury may be established by demonstrating that an inmate's efforts to pursue a nonfrivolous claim were frustrated or impeded by . . . an official's action." *Barbour*, 471 F.3d at 1225 (citations omitted). Whether a plaintiff suffered "actual injury" is a narrow inquiry, focusing solely on a prison official's interference with nonfrivolous appeals in a criminal case,

11

petitions for habeas corpus, or civil rights actions.  *Al-Amin*, 511 F.3d at 1332.  Upon amendment, to the extent that he asserts an access-to-courts claim, Plaintiff must describe how he alleges he suffered an actual injury, as defined herein.

## B. Tier II Confinement and Due Process

The Fourteenth Amendment's Due Process Clause "does not directly protect an inmate from changes in the conditions of his confinement" or create a constitutionally protected interest "'in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters.'"  *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir. 1991) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).  Generally, "[w]hen an inmate is placed in conditions more restrictive than those in the general prison population, whether through protective segregation . . . or discretionary administrative segregation, his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time."  *Earl v. Racine Cty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (per curiam).  Thus, to state a due process claim, a prisoner must allege more than just confinement

in segregation without due process.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The prisoner must also show that the nature of his confinement (*i.e.*, the conditions or duration) gives rise to a protected liberty interest and otherwise entitles him to some measure of due process.  *See id.* at 486-87.

If a prisoner establishes a liberty interest, as discussed above, the court must then consider whether the defendants provided the prisoner sufficient due process, considering the following three factors identified by the United States Supreme Court in *Mathews v. Eldridge*: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. 319, 335 (1976); *see also Wilkinson v. Austin*, 545 U.S. 209, 224-25 (2005)

(applying the *Mathews v. Eldridge* framework to Ohio prisoners' due process right to avoid assignment to the state "Supermax" facility).

Here, Plaintiff has not provided enough details about his Tier II confinement in relation to confinement in general population for the Court to determine whether the nature of his Tier II confinement is particularly harsh as compared to those conditions he would be subject to in general population.  The Court is aware that Plaintiff believes his confinement was excessively long, and notes Plaintiff's allegations that the conditions were generally filthy, and even that medical care was denied, but it is unclear whether such allegations implicate due process.

In this case, the length alone does not substantiate a claim that Plaintiff's liberty interests were affected.  *Morefield v. Smith*, 404 F. App'x. 443, 446 (2010) (affirming district court's entry of summary judgment on the due process claims of a plaintiff who was held in administrative segregation for four years when "the conditions of his confinement were generally equivalent to general prison population conditions and the length of his stay in administrative segregation did not extend the length of his sentence.").  Moreover, if the alleged prison conditions existed throughout the prison, Plaintiff's allegations are more

14

properly considered under the Eighth Amendment's conditions of confinement clause.   But if conditions concomitant with Tier II confinement were significantly more decrepit and/or designed to further punish, as compared to those in the general population confinement within GSP, Plaintiff might state a claim. *Magluta v. Samples*, 375 F.3d 1269, 1283-84 (11th Cir. 2004) (holding that conditions of confinement can amount to an atypical and significant hardship when a prisoner alleges that he was in solitary confinement, locked in an extremely small, closet-sized space, with minimal contact with other human beings for a prolonged time exceeding 500 days.).

Therefore, Plaintiff has not stated facts which persuade the Court that a liberty interest is affected, and that he was consequently due any sort of process.  Upon amendment, if Plaintiff states facts indicating his liberty interests were affected by alleging the conditions were significantly harsher than those in general population, the Court will then engage in its analysis of whether he was deprived of procedural due process. *See Hewitt*, 459 U.S. at 472 (officials "were obligated to engage only in an informal, non-adversary review of the information supporting respondent's administrative confinement, including whatever statement

15

respondent wished to submit, within a reasonable time after confining him to administrative segregation.") (abrogated by *Sandin*, 515 U.S. 472); *but see Wilkinson*, 545 U.S. at 228–29 (*Hewitt* "remain[s] instructive for [its] discussion of the appropriate level of procedural safeguards.").

Assuming Plaintiff shows his liberty interests were at stake, to then state a procedural due process claim, he must allege: (1) the deprivation of that constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Indeed, Plaintiff has already generally asserted these elements; he claims he was placed in Tier II for retaliatory reasons by state actors, and that his continued confinement there was arbitrary and prolonged without any process. *Quintanilla v. Bryson*, 730 F. App'x 738, 744 (11th Cir. 2018) (After placement in administrative segregation, involving atypical and significant hardship, "there must be some sort of periodic review of the confinement" and "administrative segregation may not be used as a pretext for indefinite confinement of an inmate,") (quoting *Magluta*, 375 F.3d at 1279 n.7 and *Hewitt*, 459 U.S. 460.). However, because any amended complaint will

16

supersede his first Complaint, he is forewarned that restatement of facts supporting these elements will be required.[2]

## C. Eighth Amendment Conditions of Confinement

The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)).  First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment.  The challenged condition must be "extreme." *Hudson*, 503 U.S. at 9.  Additionally, in determining the nature of the condition, "the Eighth Amendment is concerned with both the severity and the duration of [a] prisoner's exposure to [unpleasant conditions]." *Chandler*, 379 F.3d at 1295.  Second, Plaintiff must satisfy a subjective prong by showing that Defendants acted with a culpable

---

[2] To the extent Plaintiff asserts a substantive due process claim, the Eighth Amendment provides an explicit textual source for his challenge to the conditions of his confinement and the lack of penological justification.  For that reason, he likely cannot bring a substantive due-process claim based on the same allegations. *Quintanilla*, 730 F. App'x at 748 (citing *Albright v. Oliver*, 510 U.S. 266, 276 (1994) ).

state of mind, which is judged under a "deliberate indifference" standard. *Id.* at 1289.

As to the first element of Plaintiff's Eighth Amendment conditions claim, Plaintiff fails to meet his burden.  Indeed, Plaintiff's relatively short confinement in a cell with what appears to be plumbing is not such an egregious condition which implicates more than a *de minimis* concern. *See, e.g., Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) (affirming dismissal of Eighth Amendment claim based on confinement in cell for eighteen days without properly functioning toilet); *Anderson v. Chapman*, 2013 WL 4495827, at *4-*6 (M.D. Ga. Aug. 20, 2013) (granting defendants summary judgment where prisoner alleged placement on suicide watch for five days with no access to clothing, mattress, blanket, toilet paper, water or showers, and forced sleeping on floor with dried urine, blood and feces), *aff'd,* 604 F. App'x 810, 814 (11th Cir.2015); *Dixon v. Toole*, 2006 WL 1038433, at *5 (S.D. Ga. Apr. 13, 2006) (finding no Eighth Amendment violation for suicide watch cell at Webster Detention Center, including hole in floor for toilet), *aff'd,* 225 F. App'x 797, 799 (11th Cir. 2007).  As the conditions described by Plaintiff were experienced for a relatively short time, they do not appear sufficiently "extreme," and

thus, as stated, fail to implicate the Eighth Amendment's prohibition on cruel and unusual punishment.

However, even assuming Plaintiff had alleged facts which suggest the conditions of his confinement were unconstitutional, Plaintiff has not asserted that any official "acted with a sufficiently culpable state of mind" with regard to the condition at issue. *Hudson,* 503 U.S. at 8 (quotation marks and citation omitted). The proper standard is that of deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Plaintiff must shoulder a three-part burden to establish deliberate indifference by showing Defendants not only had (1) subjective knowledge of a risk of serious harm, but they also (2) disregarded that risk, (3) by conduct that is more than gross negligence. *Goebert v. Lee County*, 510 F.3d 1312, 1326–27 (11th Cir. 2007).

Here, while Plaintiff complains that officials were indifferent to medical needs, or that officials used extreme force, Plaintiff fails to assert that any official was deliberately indifferent to the conditions within the Tier II cell, specifically. For example, Plaintiff does not specifically allege that he or anyone else notified the officials, or that they were independently aware, of filthy conditions specifically. He then fails to

allege that they were indifferent to the need for remedial action. Given that Plaintiff is allowed opportunity to amend, he may buttress his allegations on this claim to clarify (1) constitutionally violative conditions; (2) that an official had subjective knowledge of a risk of harm caused by those conditions; (3) that the official disregarded that risk; and, finally, (4) that the inaction of the official was due to more than gross negligence but rather that the official intentionally acted or failed to act.

## D. Deliberate Indifference to Serious Medical Needs

To state a claim of deliberate indifference to serious medical needs, a plaintiff must allege "(1) a serious medical need; (2) [the] defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Melton V. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016) (per curiam), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Court assumes for the purposes of frivolity review that Plaintiff has alleged a serious medical need, given Plaintiff's allegations he is medicated to prevent seizures and that he has been prescribed a back brace intended to support his recuperation from injuries sustained during a seizure. *See* doc. 1 at 7.

Plaintiff alleges a claim of deliberate indifference to medical needs against Johnson and Bobbitt, as he next claims that he repeatedly sought medical attention but it was denied.  Johnson appears to have declined to assist him because of allegedly retaliatory motives.  Plaintiff also claims that he asked Bobbitt directly why he was not receiving medical attention, doc. 1 at 6, and that Bobbitt purportedly responded that he would look into it, but two days later Bobbitt told him he did not look into it, and that he would not "keep listening to it every time he (Bobbitt) comes into the dorm."  Doc. 1 at 6.  Plaintiff continued to suffer from seizures and continued to seek treatment but was denied.  Therefore, he states a claim regarding deliberate indifference to medical needs.  He is reminded that he must restate this allegation in his amended complaint or it will be deemed abandoned.

### E. Excessive Force

The Eighth Amendment prohibits "cruel and unusual punishments."  U.S. Const. amend. VIII.  As the Supreme Court has explained, "the unnecessary and wanton infliction of pain" qualifies under the Eighth Amendment as proscribed "cruel and unusual punishment."  *Hudson*, 503 U.S. at 5.  In Eighth Amendment excessive

force cases, "the core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citation and quotation marks omitted). This standard requires a prisoner to establish two elements—one subjective and one objective: the official must have both "acted with a sufficiently culpable state of mind" (the subjective element), and the conduct must have been "objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8. (cleaned up).

With respect to the subjective element, "to have a valid claim on the merits of excessive force in violation of [the Eighth Amendment], the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm." *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015); *see also Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). The objective component of an excessive-force violation focuses on whether the official's actions were "harmful enough," *Hudson*, 503 U.S. at 8, or "sufficiently serious," *Wilson*, 501 U.S. 294, to violate the Constitution. "Not every malevolent

22

touch by a prison guard gives rise to a federal cause of action." *Wilkins*,
559 U.S. at 37 .

"The Eighth Amendment's prohibition of 'cruel and unusual'
punishments necessarily excludes from constitutional recognition *de
minimis* uses of physical force, provided that the use of force is not of a
sort repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 37–
38.   Instead, the Eighth Amendment prohibits force that offends
"contemporary standards of decency," regardless of whether "significant
injury is evident," though the extent of injury may shed light on the
amount of force applied or "whether the use of force could plausibly have
been thought necessary." *Id.* at 37.   (citation and internal quotation
marks omitted).  Plaintiff's allegations support a claim that Johnson's
use of force was "sadistically and maliciously applied," and that they were
at least somewhat harmful.  He alleges that Johnson grabbed him and
slammed him into the wall while taunting him, that Johnson dragged
him up the stairs while Plaintiff yelled in pain, and that he "yanked"
Plaintiff's cuffed hands causing abrasions.   While Plaintiff's injuries
appear to be more than *de minimus*, this claim does not necessarily allege
a significant use of force implicating the constitutional prohibitions.

Construing these allegations in the light most favorable to Plaintiff, he has stated a claim.  He is again reminded that he must restate this claim for it to proceed within his amendment.

## IV.   Conclusion

A *pro se* plaintiff is entitled to at least one opportunity to amend potentially viable claims.  *Jenkins v. Walker*, 620 F. App'x 709, 711, (11th Cir. 2015) ("When a more carefully drafted complaint might state a claim, a district court should give a pro se plaintiff at least one chance to amend the complaint before the court dismisses the action."); *see also* Fed. R. Civ. P. 15(a)(2)(courts should grant leave to amend "freely . . . when justice so requires").  Plaintiff's Complaint asserts viable claims, as well claims that might be viable upon amendment.  Specifically, his claim against Ellis and Johnson for First Amendment retaliation, his claim against Bobbitt and Johnson for deliberate indifference to medical care, and his claim against Johnson for excessive force appear viable.  Plaintiff must restate these claims on amendment, or they will be deemed abandoned.  To properly consider his access to courts claim against Ellis and his due process claim against Johnson, Plaintiff must allege more facts as discussed above to state a claim.  Lastly, he must identify any

official who he alleges had subjective knowledge of the conditions of confinement but was deliberately indifferent to those conditions for that claim to progress. The Court will afford him a single opportunity to amend his complaint to plead his claims in accordance with the above.

Plaintiff is **DIRECTED** to file his amended complaint correcting the deficiencies noted above no later than April 3, 2024. Alternatively, he may inform the Court, by filing a written notice, that he wishes to proceed solely on the sufficient claims in his original Complaint, identified above, within that same period. He is advised that his amended complaint will supersede the original complaint and therefore must be complete in itself. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint"); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading"). Failure to either submit an amended complaint or elect to proceed on the sufficient claims in the original complaint will result in dismissal. *See* Fed. R. Civ. P. 41(b); S.D. Ga. L. Civ. R. 41.1.

Meanwhile, it is time for plaintiff to pay his filing fee. His most recent PLRA paperwork reflects $0.00 in average monthly deposits over the six-month period prior to the date of his Prison Account Statement, and an average monthly balance of $0.00. Doc. 8. He therefore owes a $0.00 initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) shall therefore set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.[3]

**SO ORDERED**, this 19th day of March, 2024.

_Christopher L. Ray_
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[3] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately. In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.